Kyle Miller
2990 W. Three Lakes Drive
Meridian, Idaho 83646
Telephone: (208) 919-4674
Email: yotesmiller@yahoo.com
**Plaintiff, Pro Se**

U.S. COURTS

APR 2 7 2026

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **KYLE MILLER,**<br>an individual,<br><br>  Plaintiff,<br><br>v.<br><br>**APPLE INC., a California corporation; and DOES 1–10, inclusive,**<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:26-cv-255-DCG<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>1. Strict Products Liability — Design Defect<br>2. Strict Products Liability — Manufacturing Defect<br>3. Strict Products Liability — Failure to Warn<br>4. Negligence<br>5. Breach of Implied Warranty of Merchantability<br>6. Idaho Consumer Protection Act<br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff Kyle Miller, appearing pro se, brings this action against Defendant Apple Inc. for personal injuries and damages arising from a defective MacBook Pro lithium-ion battery that ignited and burned at the residence of Plaintiff's parents in Middleton, Idaho on April 30, 2024. Plaintiff alleges as follows:

### I. PARTIES

1. Plaintiff Kyle Miller is, and at all relevant times was, a resident and citizen of the State of Idaho, residing at 2990 W. Three Lakes Drive, Meridian, Idaho 83646.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL                    — 1 —

2.    Defendant Apple Inc. ("Apple") is, and at all relevant times was, a corporation organized and existing under the laws of the State of California, with its principal place of business at One Apple Park Way, Cupertino, California 95014. Apple's registered agent for service of process in Idaho is CT Corporation System, 10020 W. Fairview Avenue, Suite 104, Boise, Idaho 83704.

3.    Apple is engaged in the business of designing, manufacturing, testing, marketing, distributing, and selling consumer electronic products throughout the United States, including in the State of Idaho, and including the MacBook Pro laptop computer that is the subject of this action.

4.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff at this time. Plaintiff is informed and believes, and on that basis alleges, that each fictitiously named Defendant is in some manner responsible for the events, occurrences, defects, acts, and omissions alleged in this Complaint and for the resulting injuries and damages to Plaintiff, including, without limitation, as designers, manufacturers, suppliers, assemblers, distributors, retailers, sellers, or component-part manufacturers (including manufacturers of the lithium-ion battery cells or battery pack incorporated into the subject MacBook Pro) of the defective product. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of DOES 1 through 10 when they have been ascertained. On information and belief, none of DOES 1 through 10 is a citizen of the State of Idaho, and the inclusion of fictitiously named Defendants does not destroy this Court's diversity jurisdiction under 28 U.S.C. § 1332.

## II. JURISDICTION AND VENUE

5.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different States — Plaintiff is a citizen of Idaho and Defendant Apple Inc. is

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL                    — 2 —

a citizen of California.

6. This Court has personal jurisdiction over Apple because Apple conducts continuous and systematic business in Idaho, including operating an Apple Store at the Boise Towne Square Mall, distributing products through authorized resellers in Idaho (including Mac Life of Boise, where the subject MacBook Pro was purchased), and deriving substantial revenue from sales to Idaho consumers.

7. Venue is proper in the District of Idaho under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District — specifically, the fire and Plaintiff's injuries occurred at 25356 Karen Drive, Middleton, Canyon County, Idaho — and under § 1391(b)(1) because Apple is subject to personal jurisdiction in this District.

8. Assignment to the Southern Division (Boise) is proper under D. Idaho Local Civil Rule 3.1 because the events giving rise to this action occurred in Canyon County, Idaho.

## III. FACTUAL ALLEGATIONS

### A. The Subject Product

9. The product at issue is a MacBook Pro (Retina, 15-inch, Mid 2015), Model A1398, EMC 2909, Serial Number C02S27G9G8WN (the "Subject MacBook"). A photograph of the bottom case of the Subject MacBook bearing the model, EMC, and serial markings identified above is attached as Exhibit B and incorporated by reference.

10. The Subject MacBook was designed, manufactured, and sold by Apple. It contains a lithium-ion battery designed and specified by Apple.

11. Plaintiff is the original purchaser of the Subject MacBook, having purchased it new from Mac Life — an Apple Authorized Reseller located in Boise, Idaho.

12. Plaintiff did not modify the Subject MacBook. Plaintiff did not have the battery or any internal component repaired, replaced, or serviced by any third party. The Subject MacBook was at all times in substantially the same condition as when it left Apple's control.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL                    — 3 —

**B. Apple's Knowledge of the Defect — CPSC Recall No. 19-152**

13.    On June 20, 2019, Apple — in cooperation with the U.S. Consumer Product Safety Commission — issued a voluntary recall of approximately 432,000 MacBook Pro (Retina, 15-inch, Mid 2015) units, designated CPSC Recall No. 19-152.

14.    The recall notice stated that the lithium-ion battery in the recalled units "can overheat and pose a fire safety risk." At the time of the recall, Apple had received at least 26 reports of batteries overheating, including reports of minor burns and property damage.

15.    By issuing this recall, Apple expressly acknowledged that the lithium-ion battery in the MacBook Pro 15-inch Mid 2015 contained a dangerous defect capable of causing fire and personal injury.

16.    The Subject MacBook is the same model, of the same production period, as the units covered by CPSC Recall No. 19-152. On information and belief, the serial number, production date, and channel of distribution of the Subject MacBook fall within the scope of CPSC Recall No. 19-152. Apple is in sole possession of the manufacturing, serial-range, and distribution data necessary to confirm coverage, and Plaintiff will establish coverage through discovery.

17.    On information and belief, Apple did not provide direct, individualized notice of the recall to Plaintiff at the address on record. Plaintiff did not receive actual notice of the recall prior to the fire described herein.

**C. The Fire — April 30, 2024**

18.    On April 30, 2024, Plaintiff was at the residence of his parents, located at 25356 Karen Drive, Middleton, Canyon County, Idaho 83644. Plaintiff's parents were not present at the residence at the time of the fire. The Subject MacBook was in a bedroom inside the home, in its closed (lid-down) configuration, sitting on the floor, and was charging via its original Apple-supplied MagSafe power adapter — the same adapter that came with the laptop from

Apple at the time of original purchase. Plaintiff was not using the Subject MacBook at the time of ignition; the device was closed and unattended.

19.    Without warning, the Subject MacBook's lithium-ion battery ignited spontaneously while the device was closed and charging on its original Apple charger. The Subject MacBook began emitting open flames, intense heat, and dense toxic smoke characteristic of a lithium-ion thermal runaway event. There was no user input, no impact, no liquid exposure, and no third-party charger or accessory involved — the device ignited on its own while in normal, intended, and Apple-recommended use.

20.    To prevent the fire from spreading and destroying his parents' home and personal property therein, Plaintiff grabbed the burning Subject MacBook with his bare hands and carried it through the home toward the exit, with toxic lithium-ion combustion smoke billowing directly into his face and airway.

21.    While running the burning, toxic-smoke-emitting computer out of the home with his bare hands, Plaintiff's right knee violently struck a chair in his path.

22.    The impact between Plaintiff's right knee and the chair was a direct and foreseeable consequence of Plaintiff's emergency response to the fire ignited by the Subject MacBook.

23.    Plaintiff successfully carried the burning Subject MacBook out of his parents' residence, preventing destruction of the home, but suffered immediate inhalation of toxic lithium-ion combustion smoke and immediate, severe pain in his right knee.

24.    Photographs of the Subject MacBook taken immediately after the fire show extensive thermal damage consistent with internal battery thermal runaway, including a swollen, ruptured, and charred battery compartment and melted plastic and metal components. True and correct photographs of the post-fire condition of the Subject MacBook are attached as Exhibit C and Exhibit D and incorporated by reference.

**D. Apple's Acknowledgment**

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL                                    — 5 —

25. Plaintiff promptly reported the fire to Apple. Apple opened Apple Support Case ID 102287193340 to document the incident. Apple's own internal classification of the matter, as displayed in Apple's consumer-facing support interface, identifies the issue as: "VIN, MacBook Pro (Retina, 15-inch, Mid 2015) T2: Fire." A true and correct screenshot of Apple's Apple Support Case ID 102287193340 reflecting this classification is attached as Exhibit A and incorporated by reference.

26. On information and belief, Apple has retained, inspected, or had access to information sufficient to identify the Subject MacBook as a product within the scope of CPSC Recall No. 19-152.

27. Apple maintained Plaintiff's product registration data, purchase channel records, and contact information sufficient to provide direct, individualized notice of CPSC Recall No. 19-152 to Plaintiff. Despite possessing this information, Apple did not provide direct notice of the recall to Plaintiff at the address on record. Plaintiff did not learn of the recall until after the April 30, 2024 fire.

28. On April 7, 2026, Thomas M. Crispi, Partner and Product Liability & Mass Torts Practice Leader at ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, NY 10019, sent Plaintiff a letter via email captioned "Kyle M. Miller v. Apple Inc., Date of Loss: April 30, 2024," advising that "ArentFox Schiff LLP has been asked to represent Apple Inc. in the above-captioned matter" and that "all future communications" should be directed to ArentFox Schiff. The letter copies Lili Ozarowski. By this pre-suit retention of national product-liability counsel, Apple acknowledged that it has actual notice of Plaintiff's claim, of the date of loss (April 30, 2024), and of the existence of the Subject MacBook. A true and correct copy of the April 7, 2026 letter is attached as Exhibit E and incorporated by reference.

**E. Plaintiff's Injuries and Treatment**

29. At the time of the fire, Plaintiff was 49 years old.

30.    As a direct and proximate result of the fire and Plaintiff's emergency response, Plaintiff sustained acute, severe, and permanent traumatic injury to his right knee.

31.    On June 3, 2024, Plaintiff was evaluated by James T. Beckmann, M.D., board-certified orthopedic surgeon at St. Luke's Center for Orthopedics & Sports Medicine in Boise, Idaho. Dr. Beckmann documented the mechanism of injury as "hitting a chair while running and twisted the knee during the MacBook fire response" and diagnosed post-traumatic osteoarthritis of the right knee.

32.    On June 18, 2024, Plaintiff underwent right-knee arthroscopic surgery performed by Dr. Beckmann. Contrary to a routine meniscal repair, Dr. Beckmann's operative findings documented catastrophic acute and post-traumatic damage to the right knee joint, including: (a) a medial meniscus tear involving the posterior horn extending to the midportion of the middle horn, requiring partial medial meniscectomy; (b) more than fifty (50+) chondral loose bodies, up to 6 mm in size, dispersed throughout the joint and requiring removal with shaver and grasping forceps — a volume of intra-articular debris consistent with acute traumatic shearing rather than degenerative wear; (c) a large area of near full-thickness cartilage loss of the medial femoral condyle measuring up to 3 cm in diameter; (d) unstable flaking cartilage with Grade 3 fissuring on the lateral aspect of the medial femoral condyle; (e) Grade 2 chondrosis adjacent to the lateral tibial spine; (f) Grade 2 chondrosis of the apex of the patella; and (g) Grade 2–3 fissuring of the central aspect of the trochlea. The arthroscopic procedure, despite extensive debridement, was unsuccessful in resolving Plaintiff's pain and instability.

33.    In a post-operative record dated August 1, 2024, Dr. Beckmann documented the following causation opinion to a reasonable degree of medical probability: "I believe it is more likely than not that this cascade of damage was related to the acute injury he sustained in trying to run his computer out of the house when it caught fire." This opinion satisfies the preponderance-of-the-evidence causation standard under Idaho Code § 6-1402.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL                           — 7 —

34. On November 17, 2024, Plaintiff was evaluated pre-operatively by Zachary C. Yenna, M.D., board-certified orthopedic surgeon at St. Luke's Center for Orthopedics & Sports Medicine in Boise, Idaho. Dr. Yenna independently documented the mechanism of injury, recording: "49-year-old male presenting for right total knee arthroplasty on 11/19/24, with right knee pain beginning 4/30/2024 when his MacBook spontaneously caught fire and he twisted the knee after hitting a chair while running out of the house to bring the computer outside to prevent house fire." Dr. Yenna's opinion was independently formed and is consistent with Dr. Beckmann's causation opinion.

35. On November 19, 2024, less than seven months after the fire, Plaintiff underwent Mako robotic-assisted total right-knee arthroplasty performed by Dr. Yenna. The procedure required full surgical excision of the anterior cruciate ligament (ACL) and posterior cruciate ligament (PCL), full meniscal removal, bone resection, and implantation of Stryker Triathlon PS press-fit femur and tibia components, polyethylene tibia tray liner, and an eccentric patellar button.

36. Plaintiff has continued to deteriorate post-arthroplasty. As of a clinical examination on March 12, 2026 — approximately sixteen (16) months post-total knee arthroplasty — Dr. Yenna documented "right knee with significant audible laxity on varus and valgus movement," clinical findings indicating potential implant loosening and a high probability of revision surgery. Plaintiff's IKDC functional outcome score has declined from 24.1 to 4.6 in the year following surgery, reflecting rapid post-arthroplasty deterioration.

37. Because Plaintiff received a total knee arthroplasty at age 49, the prosthetic joint has a finite service life and is expected to require one or more surgical revisions during Plaintiff's remaining lifetime, with such revisions made more likely and more imminent by the clinical signs of early implant laxity already documented.

38. Plaintiff has incurred substantial past medical expenses, including but not limited to

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL                    — 8 —

charges for the June 18, 2024 arthroscopic surgery (billed at approximately $18,000) and the November 19, 2024 total knee arthroplasty (billed at approximately $43,000), together with associated diagnostic, anesthesia, hospital, rehabilitation, medication, and follow-up costs.

39.   Plaintiff has suffered, and will continue to suffer, physical pain, mental and emotional distress, permanent impairment of his right knee, loss of normal use of his right knee, future medical expenses including the high probability of revision arthroplasty surgery, inhalation injury from acute exposure to toxic lithium-ion combustion smoke, and loss of the enjoyment of life.

## F. Preservation of Evidence

40.   By its April 7, 2026 letter (Exhibit E), Apple, through counsel, demanded that Plaintiff preserve the Subject MacBook and stated that Apple "reserves any rights and remedies it may have based on the failure to preserve any such evidence, including the right to assert spoliation of evidence and all penalties associated therewith." Plaintiff has preserved and continues to preserve the Subject MacBook in its post-fire condition. Plaintiff likewise places Defendant Apple Inc. on formal mutual notice to preserve all physical, electronic, and documentary evidence relating to this matter, including but not limited to: (a) any exemplar units, components, batteries, or battery cells of the MacBook Pro (Retina, 15-inch, Mid 2015) in Apple's possession or control; (b) Apple Support Case ID 102287193340 in its complete form, including all internal classifications, notes, routing codes, and the "T2: Fire" designation; (c) Apple's complete internal incident database, thermal-event reports, customer-reported fire reports, and engineering analyses relating to MacBook Pro (Retina, 15-inch, Mid 2015) battery overheating, ignition, or fire; (d) all records relating to CPSC Recall No. 19-152, including the serial-number range, production-date range, recall-notice distribution lists, customer-registration data, and direct-notice communications; and (e) all communications between Apple and the U.S. Consumer Product Safety Commission concerning the recalled units. Plaintiff likewise reserves

all rights and remedies, including the right to assert spoliation of evidence and all penalties associated therewith.

## IV.  CAUSES OF ACTION

### COUNT I
### STRICT PRODUCTS LIABILITY — DESIGN DEFECT

41.    Plaintiff incorporates by reference paragraphs 1 through 40 as though fully set forth.

42.    At the time it left Apple's control, the Subject MacBook was in a defective condition unreasonably dangerous to the user because of its design — specifically, the design of its lithium-ion battery and battery containment system was prone to thermal runaway and ignition during ordinary, foreseeable use.

43.    Apple's issuance of CPSC Recall No. 19-152 constitutes an admission that this design was defective and unreasonably dangerous.

44.    Safer alternative designs were technically and economically feasible at the time of manufacture, including improved cell separators, enhanced thermal management, and battery-management firmware capable of safely shutting down a cell entering thermal runaway.

45.    The defective design was a direct and proximate cause of the fire and of Plaintiff's injuries and damages.

### COUNT II
### STRICT PRODUCTS LIABILITY — MANUFACTURING DEFECT

46.    Plaintiff incorporates by reference paragraphs 1 through 45 as though fully set forth.

47.    When it left Apple's control, the Subject MacBook deviated in a material way from Apple's intended design and from other ostensibly identical units, in that its lithium-ion battery contained a manufacturing flaw — such as internal contamination, electrode misalignment, or separator damage — that rendered it dangerously susceptible to thermal runaway.

48.    This manufacturing defect was a direct and proximate cause of the fire and of Plaintiff's injuries and damages.

## COUNT III
## STRICT PRODUCTS LIABILITY — FAILURE TO WARN

49. Plaintiff incorporates by reference paragraphs 1 through 48 as though fully set forth.

50. At all relevant times, Apple knew or, in the exercise of reasonable care, should have known that the lithium-ion batteries in MacBook Pro 15-inch Mid 2015 units were prone to overheating, ignition, and fire.

51. Apple failed to provide adequate warnings of this danger to consumers, including Plaintiff, both at the time of sale and in the years following sale as Apple acquired additional knowledge of the defect.

52. After issuing CPSC Recall No. 19-152, Apple failed to undertake reasonable measures to identify the Subject MacBook and to provide direct, individualized notice of the recall to Plaintiff.

53. Apple's failure to warn was a direct and proximate cause of the fire and of Plaintiff's injuries and damages.

## COUNT IV
## NEGLIGENCE

54. Plaintiff incorporates by reference paragraphs 1 through 53 as though fully set forth.

55. Apple owed Plaintiff a duty to exercise reasonable care in the design, manufacture, testing, inspection, marketing, sale, and post-sale surveillance of the Subject MacBook, and a duty to provide adequate warnings of known or knowable hazards.

56. Apple breached these duties by, among other things: (a) designing a battery system prone to thermal runaway; (b) failing to adequately test the battery system; (c) failing to incorporate feasible safer alternative designs; (d) failing to provide adequate warnings; and (e) failing to undertake an effective recall and direct-notice campaign reasonably calculated to reach affected consumers, including Plaintiff.

57. Apple's breaches were a direct and proximate cause of the fire and of Plaintiff's

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL                    — 11 —

injuries and damages.

## COUNT V
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

58.  Plaintiff incorporates by reference paragraphs 1 through 57 as though fully set forth.

59.  Apple is a merchant of consumer electronics, including the Subject MacBook, within the meaning of Idaho Code § 28-2-104.

60.  By selling the Subject MacBook through its authorized reseller, Apple impliedly warranted under Idaho Code § 28-2-314 that the Subject MacBook was merchantable — that is, fit for the ordinary purposes for which laptop computers are used, and not unreasonably dangerous.

61.  The Subject MacBook was not merchantable: a laptop computer that ignites in ordinary residential use is not fit for its ordinary purpose.

62.  Apple's breach of the implied warranty of merchantability was a direct and proximate cause of Plaintiff's injuries and damages.

## COUNT VI
## IDAHO CONSUMER PROTECTION ACT (Idaho Code § 48-601 et seq.)

63.  Plaintiff incorporates by reference paragraphs 1 through 62 as though fully set forth.

64.  Apple's marketing and sale of the Subject MacBook to consumers, including Plaintiff, while concealing or failing to disclose the known fire risk associated with its lithium-ion batteries, constitutes an unfair or deceptive act or practice in trade or commerce within the meaning of Idaho Code § 48-603.

65.  As a direct and proximate result, Plaintiff has suffered ascertainable loss of money or property and is entitled to actual damages, attorney fees and costs to the extent permitted, and any other relief authorized by Idaho Code § 48-608.

## V. DAMAGES

66.  As a direct and proximate result of Apple's conduct described above, Plaintiff has

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL                    — 12 —

suffered damages including: (a) past medical expenses; (b) future medical expenses, including expected revision of the prosthetic knee joint; (c) past and future physical pain and suffering; (d) past and future mental and emotional distress; (e) permanent physical impairment of the right knee; (f) loss of enjoyment of life; (g) property damage to the Subject MacBook and incidental property; and (h) such further damages as the evidence may show.

67.    Plaintiff's damages exceed $75,000, exclusive of interest and costs.

68.    Apple's conduct in marketing and selling a product it knew or should have known was prone to ignite, and in failing to undertake an effective recall after acknowledging the defect, was carried out with an extreme deviation from reasonable standards of conduct, with knowledge of the likely consequences. Plaintiff reserves the right, on leave of Court, to amend this Complaint to add a claim for punitive damages pursuant to Idaho Code § 6-1604.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant Apple Inc. as follows:

A.  For all compensatory damages allowed by law, in an amount to be proven at trial;

B.  For special damages, including past and future medical expenses;

C.  For general damages, including past and future pain and suffering, mental anguish, and loss of enjoyment of life;

D.  For punitive damages on leave of Court, in an amount sufficient to punish and deter, subject to applicable Idaho law;

E.  For pre-judgment and post-judgment interest at the maximum rate allowed by law;

F.  For costs of suit, including filing fees and service fees;

G.  For attorney fees to the extent recoverable by a pro se litigant under any applicable statute, including Idaho Code § 48-608; and

H.  For such other and further relief as the Court deems just and equitable.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL                                    — 13 —

## VII.  DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.


DATED this 27th day of April, 2026.

Respectfully submitted,

**Kyle Miller**
Plaintiff, Pro Se
2990 W. Three Lakes Drive
Meridian, Idaho 83646
Telephone: (208) 919-4674
Email: yotesmiller@yahoo.com

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL                      — 14 —

**INDEX OF EXHIBITS**

The following exhibits are attached to and incorporated by reference in this Complaint pursuant to Federal Rule of Civil Procedure 10(c):

A.  Apple Support Case ID 102287193340 — screenshot of Apple's consumer-facing support record identifying the issue as "VIN, MacBook Pro (Retina, 15-inch, Mid 2015) T2: Fire."

B.  Photograph of the bottom case of the Subject MacBook bearing the markings: "MacBook Pro — Designed by Apple in California — Assembled in China — Model A1398 — EMC 2909 — Serial C02S27G9G8WN."

C.  Photograph of the Subject MacBook taken after the April 30, 2024 fire, showing thermal damage to the bottom case and screen consistent with internal lithium-ion battery thermal runaway.

D.  Additional photograph of the Subject MacBook taken after the April 30, 2024 fire, showing the post-fire condition of the lower housing from a second angle.

E.  Letter dated April 7, 2026 from Thomas M. Crispi, Partner and Product Liability & Mass Torts Practice Leader, ArentFox Schiff LLP (counsel for Defendant Apple Inc.), to Plaintiff, advising of ArentFox Schiff's pre-suit retention as counsel for Apple Inc. and demanding preservation of the Subject MacBook — with copy to Lili Ozarowski.

# EXHIBIT A

**Apple Support Case ID 102287193340 — Apple's Internal Classification: "T2: Fire"**

Screenshot of Apple's consumer-facing Apple Support interface for Case ID 102287193340, identifying the issue as: "VIN, MacBook Pro (Retina, 15-inch, Mid 2015) T2: Fire."

# Apple Support

## Case ID: 102287193340



**Issue**    VIN,MacBook Pro (Retina, 15-inch, Mid 2015) T2: Fire

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL                — Ex. A —

# EXHIBIT B

### Subject MacBook — Bottom Case Identification Markings

Photograph of the bottom case of the Subject MacBook, showing manufacturer markings:
"MacBook Pro — Designed by Apple in California — Assembled in China — Model A1398 —
EMC 2909 — Rated 20V, 4.25A max. — Serial C02S27G9G8WN."



COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL                    — Ex. B —

# EXHIBIT C

## Subject MacBook — Post-Fire Thermal Damage (Primary View)

Photograph of the Subject MacBook taken after the April 30, 2024 fire. Image shows separation and charring of the bottom case at the battery compartment, melted plastic and metal components, and ruptured display consistent with internal lithium-ion battery thermal runaway.



COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL                           — Ex. C —

# EXHIBIT D

## Subject MacBook — Post-Fire Thermal Damage (Secondary View)

Additional photograph of the Subject MacBook taken after the April 30, 2024 fire. Image shows the post-fire condition of the lower housing, with discoloration, char, and material loss localized at the battery compartment.



COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL                    — Ex. D —

# EXHIBIT E

## Pre-Suit Preservation Notice from Apple Inc.'s Counsel — ArentFox Schiff LLP, Thomas M. Crispi, dated April 7, 2026

True and correct copy of letter dated April 7, 2026, from Thomas M. Crispi, Partner and Product Liability & Mass Torts Practice Leader at ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, NY 10019, sent via email to Plaintiff Kyle M. Miller. Letter is captioned "Kyle M. Miller v. Apple Inc., Date of Loss: April 30, 2024," advises that ArentFox Schiff LLP has been retained to represent Apple Inc. in this matter, and demands preservation of the Subject MacBook. Letter copies Lili Ozarowski. The letter follows on the next page.

ArentFox
Schiff

**ArentFox Schiff LLP**
1301 Avenue of the Americas
42nd Floor
New York, NY 10019

_____

212.484.3900    **MAIN**
212.484.3990    **FAX**

_____

afslaw.com

April 7, 2026

**VIA EMAIL**

**Thomas M. Crispi**
Partner and Product Liability &
Mass Torts Practice Leader
212.745.0865    **DIRECT**
thomas.crispi@afslaw.com

Kyle M. Miller
2990 W. Three Lakes Drive
Meridian, Idaho 83646

> Re:    *Kyle M. Miller v. Apple Inc.*
> Date of Loss:  April 30, 2024

Dear Mr. Miller:

Please be advised that ArentFox Schiff LLP has been asked to represent Apple Inc. in the above-captioned matter.  We would appreciate your directing all future communications to ArentFox Schiff.

Please allow this letter to serve as Apple Inc.'s request that the subject Apple MacBook Pro remains secure and that no alteration or modification of the MacBook Pro takes place until all interested parties are afforded an opportunity to inspect and preserve evidence therefrom.  Apple reserves any rights and remedies it may have based on the failure to preserve any such evidence, including the right to assert spoliation of evidence and all penalties associated therewith.

Should you have any questions, please do not hesitate to contact the undersigned.  We look forward to working towards an amicable resolution of this matter. Thank you.

> Very truly yours,
>
> */s/ Thomas M. Crispi*
>
> Thomas M. Crispi

cc:    Lili Ozarowski

**Smart In
Your World®**

AFSDOCS:301812835.1